```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


AIRLINES REPORTING           )
CORPORATION,                 )
                             )
    Plaintiff,               )
                             )
        v.                   )      1:06cv322 (JCC)
                             )
MCBRIDE TOURS & TRAVEL, INC. )
et al.,                      )
                             )
    Defendants.              )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' motion to stay litigation pending arbitration and Defendants' motion for order compelling arbitration.  For the reasons stated below, the Court will deny Defendants' motions.

### **I. Background**

Plaintiff, Airlines Reporting Corporation ("ARC"), serves as a national clearinghouse for issuing documents and other forms to be used as air passenger tickets by travel agents to their customers.  ARC terms these documents "traffic documents."  It maintains an agency list of persons and entities qualified to issue the traffic documents.  ARC enters into a standard Agent Reporting Agreement ("ARA") with each accredited travel agent.  In May of 2003, Defendant, McBride Tours & Travel, Inc. ("McBride"), entered into an agreement with ARC.  The

agreement was entitled a Memorandum of Agreement to the Airlines Reporting Corporation Agent Reporting Agreement, and it incorporated by reference an ARA.  As owner of McBride, Defendant Dana Denise Oilar ("Mrs. Oilar") signed a copy of the agreement.  The ARA obligated ARC, *inter alia,* to provide blank traffic documents for McBride's agents to use to issue travel tickets to their clients.  It obligated McBride, *inter alia*, to submit weekly reports of its agents' ticket sales, as well as to remit amounts due on the tickets sold.  The ARA between ARC and McBride was subsequently terminated by ARC because of allegations of failing to meet the obligations found therein.

ARC filed a complaint in the Circuit Court of Arlington County alleging breach of contract, breach of fiduciary duty, and conversion and seeking over ninety-six thousand dollars in damages.  The matter was removed to this Court pursuant to a notice of removal filed on March 24, 2006.  On July 7, 2006, Defendants filed a motion to stay litigation pending arbitration and a separate motion for an order compelling arbitration.  These motions are currently before the Court.

## II. Standard of Review

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, a court must enforce an arbitration agreement that: (1) comprises part of a written contract between the parties "if the contract or transaction involves interstate commerce"; (2)

pertains to the specific dispute at issue; and (3) is "valid under general principles of contract law." *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 531-32 (E.D. Va. 1999) (Payne, J.) (citing 9 U.S.C. § 2).  Section 3 of the FAA requires that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

*Id.* at 532 (quoting 9 U.S.C. § 3).  According to the Supreme Court, the FAA evinces a "'liberal federal policy favoring arbitration agreements.'"  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24 (1983)).  Where a contract includes an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'"  *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *see also Moses*, 460 U.S. at 24.

Notwithstanding the presumption in favor of arbitration, "because the legal predicate of compulsory arbitration is contractual consent, courts can require arbitration only of those disputes which the parties have agreed to arbitrate." *Hendrick*, 50 F. Supp. 2d at 532 (citing *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 374 (1974)); *see also AT&T*, 475 U.S. at 648 (stating that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit") (citations omitted). Thus, the presumption does not apply to resolve doubts concerning "whether the parties have reached an agreement respecting what they will arbitrate." *Hendrick*, 50 F. Supp. 2d at 533 (citing *Carson v. Giant Food, Inc.*, 175 F.3d 325, 328 (4th Cir. 1999)).

The party requesting the stay and compulsory arbitration carries the burden of proving that the claim is "referable to arbitration under the contract." *Hendrick*, 50 F. Supp. 2d at 532 (citing *Carson*, 175 F.3d at 331). In ascertaining whether the claim is referable to arbitration, "[o]rdinary state law" contract-formation principles control, which, consequently, "require that ambiguities in unilaterally prepared contracts are to be resolved against the drafter." *Id.* at 533 (citations and quotations omitted); *see also Donnelly v. Donatelli & Klein, Inc.*, 258 Va. 171, 182, 519 S.E.2d 133, 140 (Va. 1999) (reciting the rule that "'[i]n the event of an

-4-

ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement'") (quoting *Martin & Martin, Inc. v. Bradley Enters.*, 256 Va. 288, 291, 504 S.E.2d 849, 851 (1998)).  Irrespective of the presumption in favor of arbitration, the Court must determine the "scope and meaning of an arbitration provision," which requires the Court to apply "traditional and familiar rules of contract interpretation."  *Id.*

### III. Analysis

Defendants argue that Section XXIII of the ARA requires that this dispute be arbitrated rather than litigated in this Court.  Section XXIII states:

> Disputes between the Agent and ARC shall be resolved by the Arbiter in accordance with the rules and procedures promulgated and published by the Arbiter and the decision of the Arbiter shall be final and binding; provided, however, that neither the Agent nor ARC is precluded from seeking judicial relief to enforce a decision of the Arbiter, or to compel compliance with a requirement or prohibition of this agreement prior to the filing of an answer, or other responsive pleading, in a proceeding concerning such requirement or prohibition before the Arbiter.

(Defs' Mot. Ex. A.)  Defendants insist that the parties have not mutually agreed to resolve their disputes relating to the ARA in any matter other than by binding arbitration as provided in Section XXIII.  Additionally, they note that ARC impliedly recognized the arbitrability of the dispute in issue when it provided for procedures ARC could follow in filing a complaint

for the Agent's failure to maintain safeguards from the theft in question.

Plaintiff responds that the ARA does not require arbitration for all disputes, but rather the arbitration rights of either the Agent or ARC are specifically enumerated. Plaintiff lists Sections IV.E.2, VI.A, VI.b, VII.F.W, IX.E, XI.C, XV.A, XV.B, XVII.C.2, XX.B, and XX.F as examples of specific circumstances under which the ARA affords either party a right to arbitrate a dispute.  Instead of serving as a broad arbitration clause, Plaintiff purports that Section XXIII merely prescribes the governing rules of procedure in the event that ARC or the Agent invokes arbitration as a means to resolve a dispute covered under one of the specific arbitration provisions in the ARA. Since Plaintiff purports that no provision of the ARA allows Defendants to arbitrate its dispute in this circumstance and Defendants cite no authority in the ARA other than Section XXIII, it claims that this Court maintains jurisdiction.

The Court agrees with Plaintiff that Section XXIII is not a broad arbitration clause and therefore cannot be used to require the arbitration of all disputes under the ARA.  In reading the contract as a whole, it is clear that the ARA specifically outlines those circumstances under which arbitration is required.  As Plaintiff suggests, it would be superfluous to include these specific provisions if Section XXIII were intended

to be all-encompassing.  Furthermore, when considering the plain language of Section XXIII alone, there is no suggestion that it considers anything but procedures for arbitration.  The absence of the typical "arising from" or "relating to" language, along with the focus completely on the rules and procedures of the Arbiter, make it entirely clear from the language alone that this section is intended to clarify the mechanism for arbitration rather than describe the subject matter for arbitration.

Defendants' motion lists no provision other than Section XXIII as authority for staying this litigation pending arbitration.  Since Section XXIII provides no grounds for staying this litigation, the Defendants' motion will be denied.  While this is a sufficient ground for denying the motion entirely, the Court also notes the validity of Plaintiff's argument that since there is no contractual relationship between the Oilars and ARC, there are no grounds for staying any dispute between those parties pending arbitration.

### IV. Conclusion

For the reasons stated above, the Court will deny Defendants' motion to stay litigation pending arbitration and Defendants' motion for order compelling arbitration.

July 24_, 2006                         _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE